Specialized Loan Servicing Well, you might as well come up to the podium anyway. I think Judge Jolly's coming right back, but go ahead. He might come back, he might not. We don't know. That last case may have done him in. Judge Jolly. Judge Jolly. I'm sorry about the delay, but we'll make up for it here. I think they settled the case while you were gone, so not quite. Okay. Mr. Nixon, we'll hear from you representing Mr. Owens. May it please the Court. Good morning, Your Honors. I think it would be helpful if I perhaps divide my argument into two. I'd like to speak first regarding the jurisdictional issue that we face, and then I'd like to move on and speak frankly about some of the problems with my case and how I think that the Court might wish to go about resolving them. First of all, there is an issue of jurisdiction here, and that issue was, of course, raised by the Court sua sponte. We did not raise it. But now that the matter is raised, we do believe there is a problem. And the problem is really one of two components. The first involves what conclusions can be drawn from the record that we have and then the filings that have been made on appeal with respect to the existence of diversity jurisdiction. The second component of the problem is if the Court believes that it cannot sustain, based on where we are now, the existence of diversity jurisdiction, then what is to be done? Should the Court remand to the district court for a dismissal? Should the Court remand to the district court for further fact-finding and a reopening of the record with respect to the citizenship of the parties? Or should the Court itself allow new evidence, such as, for example, the papers that have been filed by my friend in his motion to amend the notice of removal? We would respectfully suggest that the evidence is not sufficient to show the existence of diversity jurisdiction. Right now, on the record as it was before the district court, I think it's agreed that we don't know enough in order to say that the parties are diverse. We cannot establish the identities of the members of the defendant in the filing that was made by my friend. There is a new corporate structure that is put forth, a new company structure. We're told that there's an LLC, and then there's a holding company LLC, and that then there is an Australian company, corporation, and that all entities are, in a sense, they're not Texans. There's nothing Texan about them. And this, I would note that in the corporate disclosure statement that the appellee filed in its brief, there were two other entities specified. One was Computer Share U.S. Services, Inc., a Delaware corporation, and then its owner, Computer Share U.S., a Delaware general partner. And I'm not sure that we know enough about them. So we believe that the evidence is not sufficient right now with respect to the citizenship of the appellee. The question becomes, what should the court do? And we believe what we would like is for the court to dismiss the case or ask the district court to dismiss the case for want of jurisdiction. What is the nubbin of your argument here, though? I'm sorry? What is the nubbin of your argument here? What is your basic complaint here about the failure of that to show diversity? Is there some specific LLC party? What are you arguing about just generally or specifically? Well, does Your Honor mean with respect to what they filed in this court? That's right. I'm not sure we have enough evidence, Your Honor. We have Dun & Bradstreet reports. We have a corporate disclosure statement. I don't believe we have any information about this Delaware general partner or Delaware corporation. Perhaps my friend will say that. I just want to ask you, what do you challenge? What specifically do you challenge destroys diversity in this case? I challenge all of their evidence. And we would respectfully believe that this court is not the appropriate forum to hear it or to weigh it. Okay. You're challenging it all without being specific about anything? Is that what you're saying? Well, Your Honor, I don't think it's enough. I don't think there's been enough presented. I mean, why is it not enough presented? That's what I'm asking you. Well, for one, I'm not sure about the Delaware entities, whether they are supposed to exist or whether my friend is saying that they're not a part of the picture. He might clarify that. Okay. Why don't you probably move on to the merits of your case maybe? I mean, it's your time. You can do whatever you wish. But we're not going to resolve the diversity right here in this argument, I should think. Yes, sir. On the merits, we think there are several points to consider. Some of the key ones are there's the question of exhaustion and there's the question of reliance with respect to promissory estoppel. And there's also the question with regard to the contract claim of consideration. With regard to exhaustion, we do have an exhaustion problem, and we don't deny that. But we still think that there are ways that the court can reach our arguments. What's your exhaustion problem? I'm sorry? What is your exhaustion problem? Well, the exhaustion problem, I think, as my friend would put it, would be that, one, with respect to the breach of contract claim, we didn't argue specifically that the modification had consideration below. We didn't say that below because we didn't make the argument about interest. It's not exhaustion. It's waiver. Is that what he's saying, that you waived these arguments because you didn't make them below? He might say that, Your Honor. I'm not sure of the exact, off the top of my head, the exact phraseology that he employed. But it could be considered a waiver argument. Perhaps I misspeak. With respect to promissory estoppel, that it was not raised in the pleadings. With respect to quasi-estoppel, the same. But I think that there are authorities. The court can reach these points if it wishes. We don't wish to if you waived them. In other words, our rules would just generally prevent our addressing issues that you had failed completely to raise below. Well, Your Honor, we do believe that the nucleus of facts has always been the same. And the arguments may have changed in terms of their phraseology, but we've been saying the same thing all along, which is that they. . . That you want your house. Correct. But you can't just say. . . You know, you can't just come up and say that they've got money in their jeans and you want it. You've got to say more than that. I understand, Your Honor, but I think we have said throughout that they were unjustified in walking away from this modification. I mean, does the statute of frauds under Texas law apply here? I mean, you've got a loan for over $50,000, which would seem to indicate that you have to have some sort of document signed by both parties. Do we have that here? We do not, Your Honor. First of all, yes, the statute of frauds does apply. Second of all, we do not have an agreement that is signed by all the parties. Well, I wouldn't be so fast as to say that. You have a letter that was sent out by the other side you're opposing that said, sign up this thing. You know, you've qualified for a loan modification. Sign up these things and send them back. And if you signed them, was there anything in that package of paperwork other than the fact that there was a place for them to sign? But the letter, the transmittal letter that sent it all to you said, congratulations, you've arrived. Sign up this stuff and send it back. I mean, was that enough, those two documents together, the transmittal letter and the contract, was that enough for a contract? Why not? We think so, Your Honor. Well, I don't know whether you do think that. You didn't say so. I was going to say I think I made that argument for you, but I don't understand why those two documents taken together are not enough here. Plus, you made the payments. Your Honor, I didn't mean to say that they weren't enough. I just meant to say that there's no paper that we both, in response to Judge Prado's question, there's no paper that both have signed. But I don't think that that is a requirement. I would like to say with respect to exhaustion, if I may, that although we think federal law is the law that should apply, in the Moore-Berger case, the Supreme Court of Texas did reach a promissory estoppel claim that had not been specifically pleaded below or in the court of appeals. And this court has a decision called Langhoff Properties LLC v. BP Products North America 519F3256. At note 12, the court said that it would reach the issue of whether or not there was a novation because they did feel that I believe there would be a miscarriage of justice. So there are precedents out there where the court can reach these issues. If we've waived them, there's no jurisdictional problem in doing that. And we find there is a bit of a disconnect if, for example, on jurisdiction we do say there can be an amendment, there can be new evidence, then I understand that jurisdiction is its own animal, but it would seem unfair to say you can have new, you can bring in new proofs, but you, the Owens, cannot on the basis of all an existing nucleus of facts make new arguments. Your clients made an effort to accept that letter. They paid and they tried to sign electronically. The problem was that their equipment, or according to one of their persons, was messed up and that electronic signature never went through. Is that correct? Am I fact correct? So should that count against you because they never got a signature or would you say because it was their equipment's fault that it should not be held against your client? Your Honor, I would say that it should not be held against our client because it was their equipment's fault. And Mr. Owens testified that he had spoken with a representative for the appellee and that that representative had indicated that there was a problem with the electronic signing room and that they don't use the same software anymore. I think that if you have a letter that's really an offer, which is how we construe the letter accompanying the modification agreement, and someone goes into your signing room and accepts, then if you don't get it, it's on you. Moreover, they make an argument that I think rings hollow on the facts of what happened here. They make it at page 309 of the record in their reply in support of summary judgment. They say, you didn't try to do anything to save this loan until it was too late. And I find difficulty accepting that, and I think that the court should as well because why was the loan modifiable in December but not in February? Is it really conceivable that it fell so far into default by February that they couldn't modify it? I think they — it sounds to me like — and these are jury issues, of course. We would respectfully submit. But it sounds to me like what happened is that they changed their minds. They didn't get the software. They didn't get the acceptance or somebody said, we just don't want to do this. The supervisor said, we just don't want to do this. These folks aren't worthy of this modification. Okay. Mr. Nixon, thank you very much. We have your argument. You've saved some time for rebuttal. Thank you, Your Honor. Mr. Arreo? Yes, Your Honors. May it please the Court, my worthy opposing counsel, my name is Damian Arreo. I'm appearing on behalf of Specialized Loan Servicing. First, I'd like to turn to the jurisdictional argument. I'll do this as briefly as I can. The record contains sufficient facts, sufficient allegations for the Court to anticipate jurisdiction. There is no hard evidence of jurisdiction because it wasn't challenged below. There was never an issue of jurisdiction until it was raised here at the Court. Did you allege it? Did you allege? We did, Your Honor. Not only did we allege it in our notice of removal, but statements supporting the allegations of jurisdiction appear throughout the record. For instance, the record on appeal. How many? What are we talking about? You've got partners in this? What are we talking about? Where is jurisdiction challenged? Jurisdiction was first raised by the court sui sponte. Right. Based on a misstatement of fact in the notice of removal.  The misstatement of fact was my predecessor typed into the notice of removal that SLS is a Delaware or, excuse me, is a national banking association formed under the laws of the United States. It is most definitely not. That's a case of using a form from some other deal. That is precisely right. They were representing a national bank. There you go. Yes, Your Honor. It happens. Indeed, it happened to me. The record contains sufficient allegations. Record on appeal, page 4, this is the problematic statement. It says that we're a national banking association, but it does say headquartered in Colorado. Now, that's a factual statement, a correct factual statement. On page 5, same document notice of appeal, the very next statement after the form mistake is, there is complete diversity of citizenship in this case because plaintiffs are not citizens of the same state as defendants. Direct quote. The petition filed in the state court that we removed contains a statement as to SLS's formation and jurisdiction. They say it's a Delaware LLC, correctly, with a principal place of business in Colorado. Joint discovery plan that was filed, Rule 26F, it contains a statement that jurisdiction is appropriate, diversity of jurisdiction is appropriate, the court's properly exercising it, and no party contests the jurisdiction. That's record on appeal 101 and 102. And then at 114, we filed in response to Judge Gilmour's order a statement concerning removal. Judge Gilmour does this in every case that's removed. She requires a statement of when the entity was first served, when the removal took place, when the case was filed, and that the nature of the diversity, i.e. citizenship. Statement made at 114, defendant is not a citizen of the state of Texas. That statement by itself is sufficient to infer jurisdiction. 28 U.S.C. 1653 gives us a very easy answer here. I've moved to amend the notice of removal to properly state place of incorporation, citizenship, not only of SLS, but of SLS's owner and the owner of SLS's owner. And all of its members? All of its members. Each entity is wholly owned by the next entity up the chain. There are not a lot of individual partners out there. No, sir. In fact, there are none. Select Loan Servicing is a Delaware LLC. It's owned entirely, one sole member, Select Loan Servicing Holdings LLC, which in turn is owned by Computer Share Limited, which is an Australian publicly traded company. Go ahead to the merits. Sir? Go ahead to the merits. To the merits, yes, sir. Under Texas law, a note and a deed of trust are a contract. Similarly, any agreement to modify the terms of the note and deed of trust are also a contract. Nothing more, nothing less. These documents are governed by fundamental principles of contract law. They've been around for centuries. They are well known to all of us. These include principles governing formation of the contract, offer acceptance, consideration, meeting of the minds, statute of frauds, both the note and deed of trust and any subsequent modification. In the court below, your appellants asked Judge Gilmour to enforce an agreement that never gelled into an enforceable contract by ignoring some of these fundamental principles. Judge Gilmour refused properly to do this and entered summary judgment on each of the owens' claims. The owens have appealed, and now they ask this court to ignore the same fundamental principles of contract law in overturning the summary judgment. The court should decline this invitation. It should do so for two reasons. First, an enforceable contract never formed. There simply is not the presence of the prerequisites that would make this an enforceable agreement. Why is that true? I mean, your cover letter, where you transmitted this thing, did not say there were any more conditions on you. It was, you all do this, and the thing is modified. So it didn't contemplate. What it transmitted had a place for a signature, but it didn't contemplate that your client was going to rethink the deal. The proposal was sign up this stuff and make the payments, and Shazam! were there. I agree with you. So why is that not a contract right there? It's not a contract because there were conditions implicit both in the letter and in the agreement. There weren't many. The condition was to accept this, sign on the dotted line, and return it to us by December 31, 2013. That never occurred. Under Texas law, acceptance to be effective has four elements. It's complete acceptance before the offer is revoked or before a lapse of time specified for responding to the offer, make the acceptance in strict compliance with the terms of the offer, communicate it to the offeree, and do so in a way that's clear and definite. In this case, there's no doubt the Owens' intended to and attempted to accept this offer. But on December 20, they went into this computerized signing room, and the record's unclear as to what happened. There's an allegation, Mr. Owens' unsubstantiated testimony, that it is the fault of SLS's software. My personal opinion is it's probably user error, but we don't know. There's no evidence of either. In any event, the onus of accepting the offer falls on Mr. and Mrs. Owens, and the offer wasn't accepted. There is ample evidence that SLS never received the signatures prior to December 31, 2013. So their attempt at accepting the offer was ineffective. No contract formed. That is, if the November 18, 2013 letter, which is the record at 288, if that's construed as an offer. We've assumed that for argument purposes. We haven't conceded it. I will not go into the counterargument on that. In any event, the offer was not accepted in strict compliance with the terms of the offer, and it was not communicated to the offeree. In these regards, acceptance fails. Even if we get past that, there is no consideration for this contract, for this agreement. Excuse me. Clearly, under Texas law, to be legally enforceable, a contract has to be supported by consideration. If they had gotten the thing back to you, I mean, if it had landed where it was supposed to, would it have been supported by consideration? They made the payments you told them to make. Established precedent would say no. Why? Because they are already obligated to make payments under the note and deed of trust. Well, they agreed in here that they were in default. I mean, they definitely weakened their position. I don't. I mean, I guess the argument could be that if by leading them in the way that you did, that they made payments to you that they otherwise would not have made and would have spent it on groceries if they had known you were going to. As a factual matter, that is probably true, Your Honor. As a legal matter, it is not. In the case of James v. Wells Fargo, 2013, which is cited in the briefing, this court addressed a very similar situation where, in that case, an oral promise to modify had been made, then retracted. Borrowers sued seeking to enforce that promise. This court analyzed the arguments and the facts before it and said the modification is simply a re-promise to make payments that are already due under the note and deed of trust. As such, those payments do not constitute new consideration. And the James case held that. Martins v. Prairie Producing, that's out of the Houston Court of Appeals, reached a similar conclusion. Hathaway v. General Mills at the Supreme Court of Texas in 1986. There is, and it's set forth in the briefing, considerable authority for the proposition that a loan modification, in the case of a loan modification, promise to make payments under the modified loan is not new consideration. In that respect, there is no consideration supporting. So you could have gone ahead and signed this thing. They could have sent it in, if you'd gotten it, and even signed it, and still there's no consideration? That is what the authorities indicate, yes, Your Honor. So it's all a shell game on your part, your client's part? Not necessarily a shell game. I have every confidence that if the mod had been signed by all parties as planned, it would have been honored. But a modification of a loan is a financial accommodation. Is this pursuant to federal statutes and regulations? I'm sorry? Is this procedure of modification of loans that was followed in this case, is that pursuant to a federal program? It is. This was a HAMP modification, yes, sir. And so this is something that the federal government requires you to do through regulation in order to get the assurances that they provide with respect to these defaulted mortgages? Yes, Your Honor, although I'm not sure it requires may be too strong. HAMP is a voluntary program that mortgages can participate in. They are given some financial incentive by the federal government for doing so. Are you saying that even if they would have complied and paid the money that they had to pay and sent their signature electronically and complied with the letter of offer, that still it was not a binding contract because your client had still not signed off on it, even though they made the offer or they accepted the offer, we still don't have a contract? Your Honor, I'd rather not speculate, and candidly I'm not aware of any authority that addresses that question. The authority I'm citing simply stands for the proposition that the promise to make payments under modified documents is not new consideration. It's certainly consideration, but it's not new consideration that would support that contract, that modification. I don't know if I'm answering your question, sir. I'm probably dodging it, but I'm not trying to. For the first time on appeal, the appellants raised the argument that they have re-amortized accrued interest and agreed to pay interest on it. This is not properly before the court and should not be considered because it was not raised below. In point of fact, when we move for summary judgment, the summary judgment response never mentions consideration, never argues that it's present. Should the court decide to consider this argument, the court should also decide that it fails as a matter of law. Here's why. First, in the case I previously alluded to, James v. Wells Fargo, this court found no new consideration in the case of a HAMP mod. It did not directly address this issue of interest on interest, but the mod involved in the James case was also a HAMP loan modification. It also re-amortized accrued interest into the loan and charged interest on previously accrued interest. In light of James and in light of the fact that this wasn't argued below, there is authority to reject this argument. Additionally, in the case of Norwest Acceptance v. Heineke Instruments, this is Fifth Circuit, 1971, Heineke sold equipment to some purchasers who, in turn, executed a note to Heineke. Heineke then assigned the note to Norwest Acceptance. Down the road, after the customer had paid down the note a bit, Norwest Acceptance executed an additional note directly to Norwest Acceptance with a higher interest rate. This was an accommodation for a previous default. Norwest took the approach, hey, we'll just sign a new note, we'll start over again, we'll sweeten the deal a little bit, and here we go. When the case came to appeal, this court determined that the 2% increase in interest was not new consideration. Now, it did it in a slightly different context. In that context, one party was arguing that the second note constituted a new agreement, a new contract with independent consideration. The original note still existed. The court found that this was merely a novation or a modification of the original note, not an independent contract with independent consideration. That's important because we're talking about interest on interest here. Courts previously said simply increasing the amount of interest in the aggregate is not new consideration when there's a prior obligation to pay. I'd like to jump to promissory estoppel and the different equity theories that have been enunciated. These should not be properly before the court and should not be considered. Promissory estoppel was asserted as a defense to summary judgment below. Quasi-estoppel was not asserted anywhere in the trial court. These theories fail for a couple of reasons. First is they're not before the court. Second, there simply are no reliance damages here. If promissory estoppel is pled as a defense under Texas law, it is a defense to the operation of the statute of frauds. In this case, it may be a valid defense to our statute of frauds argument, but the contract itself, the alleged contract, still fails because of the acceptance issues and the consideration issues. So promissory estoppel might overcome the statute of frauds argument, but it doesn't get the loan modification agreement across the goal line into an area where it would be an enforceable contract. If promissory estoppel is pled as an affirmative cause of action, it becomes a cause of action for reliance damages, where the goal is to put the party back into its condition prior to the agreement, prior to the reliance. Reliance damages preserve the status quo ante, in essence. When I depose Mr. Owens, and this is present, these excerpts are present at the record on appeal 241, 243. When I depose Mr. Owens, in response to the question, what did you do? How did you change your position in reliance on these representations? Mr. Owens' answer was, I called an SLS representative. I attempted to sign the modification agreement. I sent an appeal letter, and I made trial mod payments. As discussed earlier, the trial mod payments were already Mr. Owens' legal obligation. There's no change in position. He would have owed the money anyway. The remaining factors are simply not reliance. There's no change of position for Mr. and Mrs. Owens. So there are no reliance damages, no cognizable reliance damages, and if you search the record, you'll find no evidence of reliance damages. This court dealt with a virtually identical argument in Waltner v. Aurora loan servicing. That's a 2013 case. In the court's analysis in the Waltner case, it looked at an affirmative claim for promissory estoppel. It looked at the loan modification in a posture very similar to this one, and it said there are no reliance damages, no evidence of reliance. All a jury could do is speculate. Therefore, summary judgment's appropriate. With respect to quasi-estoppel, quasi-estoppel forbids a party from accepting benefits of transactions and then taking inconsistent positions. The loan modification agreement confers no benefits upon select loan servicing. Proposed mod, number one, lowered the interest rate accruing at the rate interest was accruing by at least 2.99%. It increased the principal balance of the loan by at least $21,000, and it extended the maturity date 40 years from the day of the loan modification, which obviously cut the amount of money due in interest to SLS, increased the liability on SLS's books, and increased the amount of time in which SLS could reasonably be expected to recoup its investment. Okay, Mr. Bria, you have a red light. Thank you, Your Honor. I would urge you to affirm the summary judgment. Thank you, sir. Mr. Nixon, you've saved some time for rebuttal. Just moving through the points that were raised by counsel for the appellee, first of all on jurisdiction, the problem we submit is if the court's going to allow supplementation of the record or even further fact-finding below, does that mean that Howery v. Allstate Insurance Company is no longer good law? We respectfully submit that the case law from this court on what to do here is not clear. I would like to note as a side point that I think one of the arguments that I made, page the end of my supplemental brief, it should be considered in light of Justice Ginsburg's point at the end of Caterpillar v. Lewis. In the interest of candor, I came across that yesterday, and I thought that it was something that I should clarify to the court. I think that our argument for not allowing supplementation of the record is not wrong, but it should be considered in tandem with— How do you want to supplement the record? We don't want to supplement the record. We believe they are the ones— He says his should be allowed. Should not be allowed. If I said that, Your Honor, I'm sorry, I misspoke. I mean it should not be allowed, supplementation. But I think our argument that supplementation should not be allowed should be considered in the light also of what Justice Ginsburg says at the end of Caterpillar v. Lewis. On the topic of— What is that she said? I'm waiting with bated breath. She said that she didn't think that parties that were not diverse would file, would remove cases to federal court and that there was an argument in Caterpillar v. Lewis that there might be some gamesmanship allowed if you shifted the focus of time at which you looked at when the parties were diverse from the time the action is filed to the time a case is tried. And— That's not really an issue in this case. But I just feel better raising that point, Your Honor. With respect to the question of does interest on interest constitute consideration, we do not submit that the cases cited by my friend go as far as it is suggested. We think that obviously interest is a very important consideration in any loan or in any loan modification. And we think that you look to the intent of the parties to see what they thought was important. Here in this case, SLS did think that interest on interest was important because they specified in the modification papers very clearly this is an obligation you wouldn't have otherwise. And that is some indication that they thought it was a bargaining, something that was being bargained. There is a case from the Texas Court of Appeals from 1893, Baker v. Collins, at 23 Southwest 493, where the court does appear to suggest that increased interest can be consideration when it's traded for more time to pay a loan. And it is true that in that case it's a little difficult to know if on the modification they were giving security for some notes that wasn't extant before. I found the language a little unclear at page 524 of 4 Tech Civ App 520. But we don't believe that it's foreclosed that interest on interest is not consideration. With regard to promissory estoppel, if the only damages are reliance damages, if the question is can we get put back to where we were before, well, my friend has said in his reply in support of summary judgment that now it's too late for the hamp. So if it was before, then that's the opportunity that was lost by going down this modification rabbit hole, the opportunity to get a modification. And putting them in the position they were in before means honoring the modification. Thank you. Thank you, sir. Thank you.